UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DJUAN T.,

                Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

20-CV-01648-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 12).

Plaintiff Djuan T.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 9) is granted, defendant's motion (Dkt. No. 10) is denied, and the case is remanded for further administrative proceedings.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, Plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on May 8, 2018, alleging a disability onset date of April 24, 2017.  (Administrative Transcript ["Tr."] 150-62).  The application was initially denied on July 25, 2018.  (Tr. 56-67).  Plaintiff timely filed a request for an administrative hearing. (Tr. 70-72).   On October 17, 2019, Administrative Law Judge ("ALJ") Gina Pesaresi held a video hearing from Jersey City, NJ.  (Tr.22-45).   Plaintiff appeared, with his attorney, in Buffalo, NY.  A vocational expert also appeared.   The ALJ issued an unfavorable decision on October 30, 2019.  (Tr. 9-21). On September 17, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

### I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.   *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 8, 2018, the application date.  (Tr. 14).  At step two, the ALJ found that Plaintiff had the following severe impairments: right eye optic nerve detachment, and a strain of the left eye in 2019.  (Tr. 14).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-19).  Prior to proceeding to step four, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could not perform a job that requires fine visual acuity or depth perception. Additionally, the claimant could never work around hazards, such as unprotected heights, or moving machinery. Furthermore, the claimant would be unable to operate a motor vehicle at night.

(Tr. 14-16). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 17). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 17-18). Accordingly, the ALJ determined that Plaintiff has not been under a disability from May 8, 2018, the date the application was filed.  (Tr.18).

- 6 -

IV.   _Plaintiff's Challenge_

Plaintiff argues that the case should be remanded because the ALJ erred by mischaracterizing the evidence in the record and failing to develop the record to close an obvious gap.  The Court agrees.

When there is no competent medical opinion evidence regarding Plaintiff's functional capacity during the relevant time period, there is "a significant and obvious gap in the evidentiary record". _Covey v. Colvin,_ 204 F.Supp.3d 497, 507 (W.D.N.Y. 2016). "[A]lthough the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a general rule, the Commissioner 'may not make the connection himself.'" _Ramos v. Colvin,_ 2015 WL 925965, at *10-11 (W.D.N.Y. Mar. 4, 2015) (_quoting Deskin v. Comm'r of Soc. Sec.,_ 605 F.Supp.2d 908, 912 (N.D.Ohio 2008)). "Administrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings in instances where there is a relatively high degree of impairment." _Palascak v. Colvin,_ 2014 WL 1920510 at *8-9 (W.D.N.Y. 2014), _quoting Kinslow v. Colvin,_ 2014 WL 788793 at *5 (N.D.N.Y. 2014). While an ALJ may pick and choose between various medical opinions, he or she may not substitute his or her own medical judgment for that of an expert. _Balsamo v. Chater,_ 142 F.3d 75, 81 (2d Cir. 1998). An ALJ's determination of RFC on the basis of "bare medical findings," without a medical advisor's assessment is not supported by substantial evidence. _Wells v. Colvin,_ 2015 WL 6829711, at 2 (W.D.N.Y. 2015), _citing Dailey v. Astrue,_ 2010 WL 4703599, at *11 (W.D.N.Y. 2010).

An ALJ may make a finding based on a "common sense" judgment about functional capacity even without a physician's assessment, but only in limited circumstances, such as when the medical evidence shows relatively minor physical impairment. *Wilson v. Colvin,* 2015 WL 1003933 at *20 (W.D.N.Y. 2015). However, the ALJ cannot make such a judgment in complex cases with medical findings that merely diagnose impairments without relating them to specific work-related capacities. *Palascak,* 2014 WL 1920510 at *9-10. An ALJ may also be required to order a consultative examination when needed to make an informed decision. *Falcon v. Apfel,* 88 F.Supp. 87, 91 (W.D.N.Y. 2000). The ALJ is not a medical expert, and therefore errs when he or she comes to a RFC with highly specific limitations without reliance on a medical opinion. *Weaver v. Berryhill,* 2018 WL 2077568 at *4 (W.D.N.Y. 2018), *quoting Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). It is unclear how an ALJ, who is not a medical professional, can come to a "highly specific" determination of Plaintiff's abilities without guidance from a medical opinion. *Hopper v. Berryhill,* 2017 WL 5712307 at *3 (W.D.N.Y. 2017).

Here, the evidentiary record contained no actual medical opinion evidence addressing Plaintiff's functional limitations stemming from his severe visual impairments. (Tr. 1-233). On July 23, 2018, State agency physician Dr. D. Brauer reviewed Plaintiff's file and opined that there was insufficient evidence. (Tr. 48-49). Nevertheless, the ALJ found that "there is ample evidence on record to conclude that the claimant suffers from significant deterioration of the right eye[.]" (Tr. 16). The record did not, however, contain any medical opinion evidence as to what functional limitations for work Plaintiff might have

because of his right eye impairment. With regards to the left eye, the ALJ continued that the evidence "is rather inconclusive as to the nature of the claimant's visual capabilities of the left eye." (Tr. 16).

The ALJ erred by not developing the record further with medical opinion evidence regarding Plaintiff's visual impairments and functional limitations for work resulting from such impairments, either by re-contacting Plaintiff's treating provider for additional treatment records and opinion evidence, or by ordering an ophthalmologic consultative examination and resulting opinion. *See Covey v. Colvin,* 204 F.Supp.3d 497, 507 (W.D.N.Y. 2016); *see Ramos v. Colvin,* 2015 WL 925965, at *10-11 (W.D.N.Y. Mar. 4, 2015) (*quoting Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D.Ohio 2008)); *see Scott v. Berryhill,* No. 1:17-CV-00468-MAT, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018); *see Falcon v. Apfel,* 88 F.Supp. 87, 91 (W.D.N.Y. 2000).

Instead, the ALJ did neither and relied upon her own lay interpretation of the "inconclusive" record in finding the limitations she included in the RFC, which include technical ophthalmologic terms that the ALJ was not qualified to assess, as she is not a medical professional.   The Plaintiff's visual impairments were not minor physical impairments about which common sense judgments could be made.  *See Palascak v. Colvin,* 2014 WL 1920510 at *8-9 (W.D.N.Y. 2014), *quoting Kinslow v. Colvin,* 2014 WL 788793 at *5 (N.D.N.Y. 2014); *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998); *See Weaver v. Berryhill,* 2018 WL 2077568 at *4 (W.D.N.Y. 2018), *quoting Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990); *see Wells v. Colvin,* 2015 WL 6829711, at 2 (W.D.N.Y. 2015), *citing Dailey v. Astrue,* 2010 WL 4703599, at *11 (W.D.N.Y. 2010; *see*

*Correa v. Colvin,* 2014 WL 4676513 at *9 (E.D.N.Y. 2014); *see Wilson v. Colvin,* 2015 WL 1003933 at *20 (W.D.N.Y. 2015).

The ALJ stated "the claimant's remaining visual capacity is largely addressed through his own admission that he was able to engage in relatively arduous work, such as roofing, provided he is not exposed to direct sunlight." (Tr. 16). However, such lay testimony was not sufficient evidence to support the RFC. "Although the ALJ relied on Plaintiff's testimony and that of lay persons regarding her activities of daily living, that evidence is insufficient to support the finding of 'light work.'" *Marshall v. Berryhill,* No. 17-CV-6307-CJS, 2018 WL 6257430, at *4 (W.D.N.Y. Nov. 30, 2018) (*citing Greek v. Colvin,* 802 F.3d 370, 376 (2d Cir. 2015) ("Consideration of such lay testimony is not a substitute for proper consideration of a treating physician's medical opinion.")).

Additionally, the ALJ mischaracterized and cherry-picked Plaintiff's testimony in arriving at her conclusion.  As Plaintiff testified, when discussing his roofing work: (1) the light would bother him and trigger a migraine; (2) he could work for maybe an hour or two before needing a break; (3) he needed an extra three breaks; (4) it took him longer to complete tasks due to his vision; and (5) it was harder to do things because of his vision, such as hitting a nail. (Tr. 27-41). Where an ALJ mischaracterizes the evidence or relies on only the portions of the record that support a conclusion of "not disabled," a remand is necessary. *See Correale–Englehart,* 687 F. Supp.2d 396, 439 (S.D.N.Y. 2010) ("[T]he ALJ cherry-picked some of the findings of the [doctor]—notably those that minimized plaintiff's psychological limitations and ignored others. This was of course improper."); *Fuller v. Astrue,* No. 09–cv–6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010) ("[T]he ALJ cherry-picked several opinions that were supportive of her decision and

disregarded the majority of the medical evidence in the record including that of the treating physicians. This type of selective analysis of the record is improper.").

Here, the ALJ failed to address or account for such testimony in the RFC, which is harmful error because: (1) the vocational expert testified that no more than 5 to 10 percent time off task would be tolerated; (2) two to three unscheduled breaks to lay down would preclude all competitive employment; and (3) unscheduled breaks would tie into time off task. (Tr. 43). Because these additional limitations testified to by Plaintiff were ignored by the ALJ in her mischaracterization of his testimony, she committed harmful error warranting remand.

Additionally, the ALJ failed to address Plaintiff's testimony regarding his migraines/headaches at any point in her decision, despite his testimony that: (1) his eye impairments caused him to experience two to three headaches a day; (2) the severity of which were between 3 to 7; (3) the headaches were worse when he strained his good eye, like when trying to read, concentrate, or focus on something; (4) the headaches were triggered by staring at something for a long time, bright lights and sunlight; and (5) the light would bother him and trigger a migraine. (Tr. 27-41). Such limitations were noticeably absent from the RFC, and any discussion of migraines/headaches was not included in the RFC determination. (Tr. 14-16). Again, such error warrants remand.

In sum, the Plaintiff here suffers from serious visual impairments. The ALJ erred by not developing the record to obtain medical opinion evidence regarding the nature and severity of those impairments, and perhaps more importantly, the functional limitations created by such impairments.

**CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No.

9) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 10) is denied,

and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      September 7 , 2022
            Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge